**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BLOCK CORPORATION**                                                                               **PLAINTIFF**

**v.**                                                                                                **CAUSE NO.: 1:08-CV-53**

**JOSE ANIBAL GOMEZ NUNEZ,
a/k/a/ JOSE GOMEZ**                                                                  **DEFENDANT**

<u>ORDER ON PRELIMINARY INJUNCTIONS</u>

This cause is before the court on Plaintiff's First Motion for Temporary Restraining Order [9], First Motion for Preliminary Injunction [10], and Plaintiff's Second Motion for Preliminary Injunction [15]. From its review of all matters made a part of the record of this case, as well as applicable law, and being thus fully advised in the premises, the Court finds that the motions should be denied. The court specifically finds as follows:

*A. Factual and Procedural Background*

Plaintiff Block Corporation is a Tupelo, Mississippi, based corporation in the business of manufacturing men's and boy's clothing and furnishings for distribution to large department store chains. In February of 2004, Block hired Jose Gomez, a citizen and resident of the Dominican Republic, to be their Director of International Sourcing. That position entailed the responsibility of contracting on behalf of Block with Block's suppliers and vendors for procuring goods and services, including those within the Dominican Republic. Block contends that by virtue of his position, Gomez had knowledge of certain privileged, confidential or proprietary information concerning Block's relationships and dealings with its customers, vendors and suppliers.

Jose Gomez ceased being an employee of Block on February 23, 2008, and since then has

allegedly placed Block's inventory of fabric, components and other raw materials in a warehouse he controls. This seizure may result in late delivery fees being assessed to Block by its customer. Specifically, Block contends it will be assessed a ten percent (10%) penalty each week the delivery is late on an order in excess of one million dollars.

Block filed a motion for temporary restraining order and preliminary injunction on March 25, 2008. Specifically, Block asked the court to prohibit Defendant Gomez, his officers, agents, servants, employees, attorneys, or any other person acting by, through or in concert with the Defendant from the continued interference with business relations resulting in non-delivery of inventory, and interference in any way with the flow of goods and services from Block's suppliers and/or vendors within the Dominican Republic. Block asserts that without this restraining order, it may be left with no remedy against Gomez and suffer irreparable harm if the injunction is not granted. In the accompanying Motion for Preliminary Injunction, Block requested that the court enjoin the defendant from contracting or communicating with customers of the Plaintiff, having any business dealings with any of the suppliers or vendors of the Plaintiff, and divulging any of Plaintiff's privileged, proprietary, or confidential information to a third party.

Block filed an additional motion for temporary restraining order on March 28, 2008, requesting that the court prevent the sale of property owned by the Defendant and located at 35 Kings Path, Columbus, Mississippi, or alternatively, to hold the proceeds from the sale in escrow. The Court granted such injunction and scheduled a hearing for April 7, 2008. On April 3, 2008, the Plaintiff filed its supplemental brief outlining the elements of preliminary injunction and citing case law which, they purport, gives this court the authority to attach pre-judgment property. The Defendant contacted the court by e-mail correspondence on April 4 requesting a continuance so that

he may employ an attorney and appear. The Court granted the request and extended the restraining order ten (10) additional days, to expire April 25, 2008, at 4:45 p.m. The hearing was rescheduled for April 11, 2008. Upon notice from the parties that settlement negotiations were ongoing, the Court rescheduled the hearing again for April 16, 2008. On that date, the Plaintiff appeared and elicited testimony on their behalf. The Defendant did not appear at the hearing.

### B. Preliminary Injunction Standard

A preliminary injunction is considered extraordinary relief, and a determination as to whether a set of circumstances warrant such relief rests in the discretion of the district court subject only to four preconditions enumerated by the Fifth Circuit. Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on a motion for preliminary injunction, a plaintiff must show (1) a substantial likelihood of success on the merits, (2) a substantial threat that he will suffer irreparable injury if the preliminary injunction is denied, (3) his threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) granting the preliminary injunction will not disserve the public interest. Speaks v. Kruse, 445 F.3d 396, 399-400 (5th Cir. 2006).

**First Preliminary Injunction [10]**

- Likelihood of Success on the Merits

Plaintiff, in its complaint, alleges five counts against Gomez: (1) breach of contract; (2) breach of fiduciary duty; (3) tortious interference with business relations; (4) breach of implied covenant of good faith and fair dealing; and (5) wrongful appropriation of trade secrets.

*(1) Breach of Contract*

Plaintiff claims that Gomez breached the conflict of interest disclosure form signed by

3

Gomez on October 7, 2005. That agreement provides that any employees who purchase goods or services for Block or who enter into and administer contracts on behalf of Block must complete and file a conflict of interest disclosure form. Jose Gomez consistently answered "no" to questions such as whether he, his spouse, dependent, or business partner, had any business dealings with Block or might have business dealings with Block in the next year; whether he or his spouse or dependent owned stock, equity or any other financial interest in any business that dealt with Block in the past or might have business dealings with Block in the next year; and whether he expected remuneration from a business or organization that had business dealings with Block in the past year or the upcoming year. Moreover, Jose Gomez's signature is affixed below an "Employee's Certification" which states:

> I have read BLOCK CORPORATION'S Conflict of Interest Policy. I understand and accept my obligation to disclose in a timely fashion any interest that I, or my spouse or dependents, might have in a proposed BLOCK transaction.
> The above is an accurate and current statement of all my reportable outside interests and activities, to the best of my knowledge.

At the injunction hearing, the Plaintiff presented a contract for the sale of 4,587 company shares of D'Lorasol Enterprising from Jose Gomez, the defendant, to Saul Batista. In that contract, Jose Gomez cites that he acquired those shares on August 4, 2001, and still owned them as of the contract date, February 21, 2008.

Plaintiff contends that Gomez's failure to apprise his employer of his interest in D'Lorasol Enterprising breached his Conflict of Interest obligation. Moreover, Block contends that Gomez willfully and wantonly failed to disclose this information to Block at the time of his hiring and throughout his employment.

"[I]t is simple contract law that a valid and enforceable contract is required to maintain an

4

action for breach of contract or injunctive relief thereon." HeartSouth, PLLC v. Boyd, 865 So. 2d 1095, 1103 (Miss. 2003). A binding bilateral contract exists when an offer, acceptance, and consideration is accepted between the parties. McKenzie Check Advance of Miss., LLC v. Hardy, 866 So. 2d 446, 453-54 (Miss. 2004). The Court finds that there is no contract between the parties in this action. The Plaintiff admitted on the stand at the preliminary injunction hearing, that Gomez "was not under an employment contract" and was, in fact, employed "at will." Further, there has not been at any point during Gomez's employment a written or oral employment contract.

The burden of proof as to the consideration of a contract rests upon the plaintiff where it is not implied by law. H.B. Owen Tie Co. v. Bank of Woodland, 101 So. 292, 293, 136 Miss. 114 (1924). Plaintiff failed to carry this burden. The only obligation imposed by the Conflict Disclosure form is the obligation of Gomez to reveal any interests in a timely manner that evolve in the future. The Plaintiff did not sufficiently establish the Conflict Disclosure Form as a contract. Therefore, the Plaintiff has failed to establish that there is a contract to be breached, and as such, the Court finds that this cause of action would not likely succeed on the merits were this issue to be placed in front of a jury.

*(2) Breach of Fiduciary Duty*

Block asserts that Gomez owed them a duty of loyalty stemming from his fiduciary duty to his employer. Further, Block contends that by owning an interest in D'Lorasol, approving invoices and charges from D'Lorasol, and having other business relationships with other Dominican Republic businesses that supplied goods and services to Block, Gomez breached a duty owed to the Plaintiff.

No Mississippi court has created a fiduciary relationship or allowed a claim for breach of a fiduciary duty based on a relationship between an employer and employee. Guthrie v. J.C. Penny

Co., Inc., 803 F.2d 202, 211 (5th Cir. 1986). The Mississippi Supreme Court has, however, held that a fiduciary relationship "applies to all persons who occupy a position out of which the duty of good faith ought in equity and good conscience to arise." Parker v. Lewis Grocer Co., 153 So. 2d 261, 275-76 (Miss. 1963). Further, a fiduciary duty exists "where one person or institution assumes a trust relationship with another, such that the former, as a matter of choice or legal obligation, assumes the responsibility to act in the best interest of the latter, even to the detriment and peril of the best interests of the former." Thus, the "existence or nonexistence of a fiduciary relationship between parties is a question of fact for the jury." Carter Equipment v. John Deere Indus. Equip., 681 F.2d 386, 390 (5th Cir. 1982).

In this case, Block has established that Gomez owed them a fiduciary duty. Block's corporate representative, Brenden Graft, vice president of finance and human resources, testified that Gomez "basically had total authority for entering into contracts and relationships for our company and controlling the production and the timeliness of deliveries and things of those natures in the Dominican Republic." Further, Graft testified that production in the Dominican Republic in recent years has been as much as fifty to sixty percent of the production volume of the company. Therefore, Gomez clearly had more authority and responsibility than a normal employee and due to his bilingual status in a country thousands of miles from Block's home base of Tupelo, Mississippi, his relationship to Block would have been one of a fiduciary.

Block has sufficiently proven that Gomez's alleged refusal to release Block's inventory from his warehouse and that his interest in D'Lorasol and other businesses with whom Block dealt constituted a breach of that duty. Therefore, there is a likelihood of success on the merits of the breach of fiduciary duty claim.

6

*(3) Tortious Interference with Business Relations*

Block contends that Gomez has interfered with its business relations by holding Block's production inventory in a warehouse allegedly controlled by Gomez. Pursuant to Mississippi law, tortious interference with business relations requires the plaintiff to show: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." PDN, Inc. v. Loring, 843 So. 2d 685, 688 (Miss. 2003).

Block contends that Gomez is willingly withholding the inventory which consequentially leads to late delivery fees assessed to Block by its customers. At the hearing, Graft noted that one and a half to two million dollars worth of raw goods inventory specifically for Block's single major customer was housed in the Caribbean Trouser warehouse. Moreover, Graft testified that once Gomez was terminated and did not receive a pay check, Gomez instructed the managers of the Caribbean Trouser warehouse to withhold and not allow Block access to the inventory. Graft further contends this cause late shipments and lost sales. As to the damages Gomez's alleged actions have caused, Graft testified that the figure would be significant and possibly in the millions of dollars once the final bill was received from their main customer.

Based on the above analysis, Block has a substantial likelihood of prevailing on these merits as well.

*(4) Breach of Implied Covenant of Good Faith and Fair Dealing*

Plaintiff contends that Gomez's misrepresentations concerning real, apparent, or potential conflicts of interest while employed at Block as Director of International Sourcing in charge of

7

procuring goods and services for Plaintiff from companies in which Defendant allegedly owns or owned an interest is a breach of the implied covenant of good faith and fair dealing.

While Block cites Mississippi Code Section 75-1-203 as conveying a duty of good faith and fair dealing between the parties involved in this litigation, that statute is Mississippi's codification of the Uniform Commercial Code and only applies to contracts for the sale of goods. See Miss. Code Ann. § 75-1-102 (outlining the purpose and policies of the Uniform Commercial Code).

The dispositive fact for analysis of this cause of action is whether there was a contract which imbued the Defendant with that duty of good faith and fair dealing. As noted above, the Conflict Disclosure Form is not a contract, and no contract of employment exists between the parties.

Mississippi jurisprudence notes that employment at will precludes an action for breach of the implied covenant of good faith and fair dealing. Perry v. Sears, Roebuck & Co., 508 So. 2d 1086, 1089 (Miss. 1987). Therefore, there is no likelihood of success on the merits of this claim where there is no contract between the parties.

*(5) Wrongful Appropriation of Trade Secrets and Documents*

Block finally contends that Gomez has wrongfully appropriated its trade secrets by sharing customer lists and procurement source lists, as well as having direct contact with competing business entities.

The Mississippi Uniform Trade Secrets Act authorizes injunctive relief to prevent the actual or threatened misappropriation of trade secrets. Miss. Code Ann. § 75-26-5. As such, to be awarded an injunction under that Act, Block need not demonstrate irreparable injury; a violation of the Act itself constitutes irreparable injury. EEOC v. Cosmair, 821 F.2d 1085, 1090-91 (5th Cir. 1987). Therefore, in order to succeed on its motion for preliminary injunction as to this cause of action,

Plaintiff must only prove that the Act was violated.

Generally, to establish trade secret misappropriation, the complaining party must demonstrate: 1) that a trade secret existed; 2) that the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and 3) that the use of the trade secret was without the plaintiff's authorization. Body Support Sys., Inc. v. Blue Ridge Tables, Inc., 1997 U.S. Dist. LEXIS 13484, 1997 WL 560920, at *6 (N.D. Miss. Aug. 12, 1997).

Under Mississippi law a "trade secret" is defined as information, including a formula, pattern, compilation, program, device, method, technique or process, that:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. 75-26-3(d) (2008). Moreover, the Act itself defines misappropriation as, inter alia, "use of a trade secret of another without express or implied consent by a person who . . . at the time of . . . use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Miss. Code Ann. § 75-26-3(b).

At the hearing on this matter, Plaintiff was unable to definitively state whether a misappropriation of information by Jose Gomez had occurred. When asked whether Gomez was known to have contacted Block's customers, which may or may not constitute a misappropriation, Graft stated that Gomez may have indirectly contacted them, or may have caused a letter to be sent from a former supplier of Block's to another of Block's customers trying to "stir up trouble."

9

When directly asked, "do you have knowledge that [Gomez] indeed has communicated at least what you consider to be privileged or confidential information to a third party at this stage," Graft answered, "I don't. I don't have proof of that." Therefore, Plaintiff cannot likely succeed on the merits without proof that Gomez misappropriated any information.

- Irreparable Injury if the Injunction is Denied

"The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 627 (5th Cir. 1985). Irreparable injury is harm that "cannot be undone through monetary damages," i.e., harm for which money damages are inadequate or for which it is virtually impossible to compute money damages. Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981); Taylor v. Cordis Corp., 634 F. Supp. 1242, 1250 (S.D. Miss. 1986).

The central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages. City of Meridian v. Algernon Blair, Inc., 721 F.2d 525, 529 (5th Cir. 1983). Plaintiff contends that Defendant's continued relations with the customers and suppliers of Block has the capacity to cause immediate and irreparable injury.

Irreparable harm exists "even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss … especially difficult or speculative." Allied Mktg. Group, Inc. v. CDL Mktg., Inc., 878 F.2d 806, 810 (5th Cir. 1989). A loss of a business' customers and damage to its goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and may thus be irreparable. See id. (affirming district court's holding that damage to

goodwill was irreparable because it might be "incapable of calculation").

At the preliminary injunction hearing, Brenden Graft stated that the extent of damage done by Gomez could be in the millions of dollars range. Moreover, he noted that the final damages calculation would take two to three months depending on when invoices from their customers were received. Graft also testified that other damages Block would sustain included late shipment costs, lost sales, lost profits, penalties, and lost revenues.

Besides monetary damages, Graft did note that there was a possibility of negative goodwill resulting from Gomez's actions as such behavior may affect Block's ability to secure new business and maintain the customers they currently have. Also, Graft noted that if the court did not grant the relief requested in this court, Block would be left remediless, as the legal system in the Dominican Republic is unfamiliar and Block has no knowledge of the interworkings of that country.

Block would be harmed by Gomez' continued interference in the Dominican Republic, however, the Plaintiff was not successful in proving that those damages could not be cured monetarily. Block's damage does not rise to the irreparable harm level necessary for the extraordinary relief of a preliminary injunction.

Because Plaintiff did not meet this threshold of the preliminary injunction analysis, the Court sees no need to further analyze this claim. Therefore, the Plaintiff's First Motion for Preliminary Injunction is hereby DENIED.

**Second Preliminary Injunction**

In the second preliminary injunction, Plaintiff seeks to hold the proceeds from the sale of Defendant's house until resolution of the underlying claim so that Block will have reparation if a judgment is entered. Block argues that equitable considerations in this case require the preliminary

injunction to issue. Specifically, Plaintiff notes that ordering an injunction would prevent inequitable conduct on the part of Defendant and relieve Plaintiff of the necessity to locate a forum in which the defendant has substantial assets. Citing Grupo Mexicano De Desarrollo v. Alliance Bond Fund, Block states the court has jurisdiction to withhold pre-judgment property where there is a danger that a defendant may dispose of his assets. 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999).

In Grupo Mexicano, a group of potential creditors requested judicial interference to enjoin a Mexican investment group on the verge of bankruptcy from transferring government-issued notes or receivables to Mexican creditors prior to the conclusion of an unrelated breach of contract action. The district court granted the injunction on the basis that if it was not granted, any judgment obtained in the breach of contract action would be frustrated. The Second Circuit affirmed.

On certiorari, the question presented was whether in an action for money damages, a United States district court had the authority to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed. The Supreme Court noted that the preliminary injunction in the case was not granted to enjoin unlawful conduct, but rather to render unlawful conduct that would otherwise be permissible in order to protect the anticipated judgment of the court. Id. at 315, 119 S. Ct. 1961.

The Court noted that as courts of limited jurisdiction, district courts are conferred only with the equity jurisdiction "exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." Id. At 318, 119 S. Ct. 1961 (citing A. Dobie, Handbook of Federal Jurisdiction and Procedure 660 (1928)). Therefore, the Court noted the substantive rule in equity that a "general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and

therefore could not interfere with the debtor's use of that property" was dispositive in this case. Id. at 319-20, 119 S. Ct. 1961. In this way, the majority specifically rejected the "expansive view of equity" advocated by the dissent (who would have allowed the injunction on the grounds of equity), and held that federal flexibility in equity is "confined within the broad boundaries of traditional equitable relief." Id. at 321-22, 119 S. Ct. 1961.

The Court found further support from the Supreme Court ruling, DeBeers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945). The DeBeers Court noted, "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," although not necessarily appropriate "with a matter lying wholly outside the issues in the suit." 325 U.S. at 220, 65 S. Ct. 1130.

Accordingly, the United States Supreme Court in Grupo Mexicano held that a district court has "no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondent's contract claim for money damages." 527 U.S. at 333, 119 S. Ct. 1961. Stated differently, federal courts do not have power to order a freeze of defendant's assets prior to judgment to assure collectability of a judgment. Id. at 319-20, 119 S. Ct. 1961.

In the case *sub judice*, the temporary injunction holding the proceeds from the sale of the house in escrow is hereby dissolved. The closing attorney for the house at 35 Kings Path, Columbus, Mississippi, is directed to release the funds from the sale of the house to Jose Gomez. Furthermore, the Second Motion for Preliminary Injunction as to these proceeds is DENIED.

*D. Conclusion*

Preliminary injunction is an extraordinary remedy, and should only be granted if the movant has clearly carried the burden of persuasion on all four prerequisites. Canal Authority of State of

Florida, 489 F.2d at 572. Plaintiff has failed to meet those four factors; therefore, the Plaintiff's First Motion for Temporary Restraining Order and First Motion for Preliminary Injunction are DENIED.

The temporary restraining order entered on March 28, 2008, is vacated and the Second Motion for Preliminary Injunction is DENIED.

SO ORDERED, this the  25th  day of April, 2008.

                                          **/s/ Sharion Aycock**
                                          **U.S. DISTRICT JUDGE**